## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

**SARAH S.C. MOREAU**                               *

      **Petitioner,**                                   *

**v.**                                              *     **Civil No.:**

**ANDREW CHRISTOPHER WHITE**                        *

      **Respondent.**                                  *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### VERIFIED PETITION FOR RETURN OF CHILDREN TO CANADA
### & FOR ISSUANCE OF SHOW CAUSE ORDER

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq.***

Petitioner, Sarah S.C. Moreau (the "Mother"), by and through her undersigned attorneys, files this Verified Petition for Return of her Children to Canada & for Issuance of Show Cause Order (the "Petition"), against the Respondent, Andrew Christopher White (the "Father").

## I.      INTRODUCTION

The Hague Convention was adopted to address and discourage the problem of international unilateral action by one parent. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014). Through the adoption of the Hague Convention, the States Parties, including Canada and the United States, have sought "to protect children internationally from the harmful effects of their wrongful removal or retention . . ." Hague Convention, preamble; *see also* Hague Convention, art. 1; International Child Abduction Remedies Act ("ICARA") 22 U.S.C.A. § 9001 *et seq.*; *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). The primary aims of the Hague Convention are "to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *Galaviz v. Reyes,* 95 F.4th 246, 251 (5th Cir. 2024) (citations omitted).

This case differs from those situations where a parent simply disagrees with a state court's authority over custody. In Canada, the Mother requested that the Canadian Court supersede the Texas state court's relocation provisions. On July 15, 2024, the Canadian court superseded the provision in the Texas order requiring the relocation of the children's primary residence to Texas from Canada and held that the children are habitually resident in Canada. On August 2, 2024, with the express consent of both parties, the Canadian court ordered the Father to return the children to their habitual residence of Canada on August 29, 2024 after a summer visit in Texas. The Father violated the Canadian order and retained the children in Texas. The Mother therefore now files her Hague petition in this Court.[1]

## II.    FACTS

1.      This Petition is filed because of the Father's wrongful retention of the children in the United States from their habitual residence of British Columbia, Canada.

2.      The Mother is the mother of two children, WFW (male, age 9, born in 2015) and CCW (male, age 6, born in 2017) (collectively the "children").

3.      The children are dual Canadian and America citizens.

4.      The Father is the father of the children.

5.      The parties met when the Mother was working temporarily in New York City.

6.      The Mother and Father were married on July 19, 2013.

---

[1] *Compare Baz v. Patterson*, 100 F.4th 854, 865 (7th Cir. 2024) (no bar preventing Hague petition notwithstanding Illinois state court having exclusive and continuing custody jurisdiction; federal court held Germany was habitual residence despite the Illinois state court continuing to assert exclusive and continuing custody jurisdiction) *with Larbie v. Larbie*, 690 F.3d 295, 308 (5th Cir. 2012) (applying pre-*Monasky* habitual residence standard; petitioner never challenged Texas state court's custody authority until her Hague petition filing), *overruled by Monasky v. Taglieri*, 589 U.S. 68 (2020); *abrogated by Smith v. Smith*, 976 F.3d 558, 561 (5th Cir. 2020); *see also Hernandez v. Erazo*, No. 23-50281, 2023 WL 3175471 (5th Cir., May 1, 2023) (unpublished per curiam) (recognizing abrogation of *Larbie* in *Smith*).

7.      The parties moved to Texas in 2014.

8.      The Mother has been the children's primary caregiver since they were born.

9.      The parties separated in 2018.

10.     At the time of the parties' separation the children were three years old and eight months old.

11.     On November 9, 2018, because of the Father's family violence against the Mother and the children, the 303rd District Court in Dallas County, Texas (the "Texas Court") granted the Mother a Final Protective Order against the Father.

12.     On November 9, 2018, the Texas Court appointed the Mother as Temporary Sole Managing Conservator of the children and appointed the Father as Temporary Possessory Conservator of the Children.

13.     The Texas Court limited the Father's access to the children to two hours supervised each week.

14.     The Texas Court enjoined the Father from going to the children's school or daycare, and from consuming alcohol and illegal drugs or medications for which he does not have a prescription.

15.     The Texas Court ordered the Father to begin treatment and counselling for drug abuse, to complete the Battering Intervention Prevention Program, and to submit to regular urine and hair drug testing.

16.     On March 8, 2019, the Father was arrested, arraigned, and subsequently released on bond for violating the Final Protective Order multiple times.

17.     The Father was later indicted by a grand jury for criminal misdemeanor and felony violations of the Final Protective Order.

18.     In July 2022, the criminal charges were conditionally dismissed.

19.    On December 16, 2019, the Mother asked the Texas Court to allow her to relocate the children to British Columbia.

20.    The Texas Court granted the Mother the right to establish the children's primary residence without geographic restriction, granted the Mother the exclusive right to apply for and maintain possession of the children's passports, and permitted the Mother to travel internationally with the children without the Father's consent.

21.    The Father did not appeal these orders.

22.    On December 17, 2019, the Mother and children relocated to British Columbia, Canada.

23.    The Mother and children have continued to live exclusively in Canada from 2019 until the Father wrongfully retained the children in the United States in August 2024.

24.    Canada is the children's habitual residence.

25.    After the Mother and children relocated to Canada in 2019, the Father did not seek to make any contact with the Mother or children for nearly two years.

26.    After the Father surfaced after nearly two years, the Mother permitted the Father to have supervised video contact with the children. Later, the Mother permitted in-person access at a visitation supervision facility in Washington State with appropriate safeguards.

27.    On July 6, 2022, the Father filed a motion in the Texas Court to remove the Mother as Temporary Sole Managing Conservator of the children, to appoint himself as Temporary Sole Managing Conservator of the children with the right to designate the primary residence of the children within Dallas and contiguous counties in Texas and to prohibit the Mother from removing the children from Dallas and contiguous counties in Texas.

28.    The Mother therefore commenced proceedings in the Supreme Court of British Columbia (the "Canadian Court") by filing a Notice of Family Claim and subsequent Notice of

Application seeking a non-removal order to protect the status quo and to prevent the removal of the children from their habitual residence of British Columbia, Canada.

29.     On September 29, 2022, the Canadian Court granted the non-removal order.

30.     On August 2, 2023, the Texas Court varied the parties' parenting rights and duties.

31.     The Texas Court appointed the Mother and Father as Temporary Joint Managing Conservators and ordered that the Mother's right to determine the children's place of residence was restricted to Dallas and Collin Counties in Texas as of July 1, 2024.

32.     But the Mother is and was unable to obtain immigration status in the United States in order to legally live and work in Texas.

33.     The Mother therefore could not relocate with the children to Texas.

34.     On June 21, 2024, the Mother asked the Canadian Court for an order that British Columbia, Canada is the children's habitual residence, and for an order extending the non-removal order from September 2022.

35.      On June 10, 2024, the Mother had also filed a motion in the Texas Court for it to reconsider its August 2, 2023 order varying the parties' rights and duties.

36.     On July 8, 2024, the Texas Court ordered that the Mother surrender the children to the Father via an amicus.

37.     On July 9, 2024, the Father obtained an ex parte order from the Canadian Court to remove the children from British Columbia, Canada.

38.     That same day, before the Mother had received notice of the Canadian Court's ex parte order, the amicus appeared with the local police at the Mother's home in Victoria, British Columbia, Canada to remove the children. The Mother and children were not at home when the amicus and the police appeared at the Mother's home.

39.     The Mother learned later that evening that the Canadian Court had entered the ex parte order and that the amicus had been to her home with the police.

40.     On July 10, 2024, the Mother's Canadian counsel appeared in the Canadian Court and requested that the Canadian Court's July 9, 2024 ex parte order be stayed.

41.     The Canadian Court stayed the July 9, 2024 ex parte order until July 15, 2024.

42.     On July 15, 2024, the Canadian Court ordered that its July 9, 2024 order was set aside on the basis, *inter alia*, that the Father had made exaggerated and unfounded allegations against the Mother. The Canadian Court further ordered that the children are habitually resident in British Columbia, Canada, that the portions of the Texas Court's August 2, 2023 order restricting the residence of the children to Texas were superseded, and that the amicus must return the children's passports and related documents to the Mother.

43.     The Father then sought for the Canadian Court to vary the July 15, 2024 order. A hearing on the Father's request was scheduled for August 2, 2024.

44.     On August 2, 2024, the Father also made an application in Canada for recognition of the Texas orders requiring the children to enroll in school zoned to his residence in Texas.

45.     The Canadian Court recognized there was a serious argument that the Texas orders would be contrary to public policy in British Columbia because the Texas Court failed to consider the views of the children and failed to analyze whether the Father's actions as a person responsible for family violence impaired his ability to care for the children and meet their needs as primary caregiver.

46.     The Canadian Court further recognized that there was also a serious question as to whether the Texas orders should be superseded because the children are habitually resident in Canada and would arguably suffer serious harm if removed from British Columbia.

Docusign Envelope ID: 71A0387A-9B54-4573-A192-B43B19E57BA9

47.    The Canadian Court further recognized, after hearing the argument of counsel for the Father, that it would not be possible to hear the argument of counsel for the Mother or resolve the issues until the end of August 2024 and that a postponement would be necessary.

48.    Both parties agreed that it was in the interests of the children for the Father to have interim contact with the children during the postponement period.

49.    On August 2, 2024, the Canadian Court entered a consent order allowing the postponement to the end of August 2024, requiring the Mother to facilitate a visit to Texas until August 29, 2024, ordering the Father to return the children, along with their passports and related documents, to British Columbia on August 29, 2024, and ordering that the hearing would recommence on August 30, 2024.

50.    The Father (whom the Canadian Court found was present by video) confirmed through his counsel that he would obey the Canadian Court order and that he would return the children to the Mother in British Columbia on August 29, 2024.

51.    The Canadian Court scheduled a further hearing for August 30, 2024—the day after the Father was required to return the children to British Columbia, Canada.

52.    But the Father did not return the children on August 29, 2024.

53.    The Father's actions after August 2, 2024 made it clear that at the time of the August 2, 2024 hearing in the Canadian Court, the Father had already formed the intention not to return the children to British Columbia, Canada, contrary to his own representations and contrary to the Canadian Court order.

54.    The Father's wrongful retention of the children began on or about August 5, 2024.

55.    In the alternative, the Father's wrongful retention of the children began on or about August 29, 2024.

56.    On August 5, 2024, the Father told the Mother by email that the children would start school in Texas on August 8, 2024.

57.    On August 7, 2024, the younger child told the Mother on a FaceTime call that the Father had told the children he was not returning them to Canada.

58.    On August 15 and 20, 2024, the Mother sent messages to the Father enquiring about the Father's travel plans for the children's return to Canada on August 29, 2024. The message chain indicated that the Father read both of the Mother's messages on the same day or the day immediately following the day she sent each message.

59.    The Father did not respond to either of the Mother's messages.

60.    The Father did not return the children to Canada on August 29, 2024.

61.    The Father retained the children in Texas and continues to retain the children in Texas as of the date of filing this Petition.

62.    Neither the Father, nor his (now-former) Canadian counsel appeared at the August 30, 2024 recommenced hearing before the Canadian Court.

63.    The Canadian Court therefore heard argument on behalf of the Mother at the August 30, 2024 recommenced hearing.

64.    At the August 30, 2024 hearing, the Canadian Court ordered that the Father was in breach of the Canadian Court's August 2, 2024 order made by consent, and dismissed the pending applications the Father had previously made to the Canadian Court seeking, *inter alia*, recognition and enforcement of the Texas orders without supersession, because recognition would be contrary to public policy and the children would suffer serious harm if removed.

65.    The Canadian Court advised that its written opinion in support of its decision would follow separately.

Docusign Envelope ID: 7140387A-8B54-4573-A192-B43819E57BA9

66.     On September 11, 2024 the Canadian Court issued its written opinion and restated its prior orders. The Canadian Court ordered that the Father is in breach of its August 2, 2024 order requiring him to return the children to Canada and that the children are habitually resident in Canada and have been since December 17, 2019. As further stated by the Canadian Court:

> Making matters worse, the Father has been misleading the courts in Texas about what I ordered, and about what he committed to following, on August 2. On August 14, he filed a document in the Supreme Court of Texas falsely stating that "Nothing in the August 2 Order requires the children to be returned to Canada…" and that it contemplated a "right of possession" (in British Columbian parlance, "parenting time") of the Mother on August 29, 2024, in Texas. I have no doubt that the Father understood that I was ordering that the Children be returned to Victoria on that date and, unless his counsel were misleading me about their instructions right in front of their client, he had agreed to do that, albeit without attorning to my jurisdiction. I have no doubt he understood this as well.

67.     The Father has retained both children in Texas in breach of the Mother's rights of custody under Canadian law as explained *infra*.

68.     This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[2] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act[3] (hereinafter "ICARA").

69.     The Convention came into effect in the United States of America on July 1, 1988, and was ratified between the United States of America and Canada on July 1, 1988.[4]

---

[2]  T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

[3]  22 U.S.C.A. § 9001 *et seq.*

[4]  *See* Hague Abduction Convention Country List, text available at: https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last accessed September 24, 2024).

70.     The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

### III.    JURISDICTION

71.     This Court has jurisdiction under ICARA § 9003 because this case involves the retention of two children under the age of 16 in the United States from their habitual residence of Canada.

72.      The children are currently located within the jurisdiction of this Court in the Eastern District of Texas.

73.     Congress has specifically granted concurrent original jurisdiction to the federal courts of actions arising under the Hague Convention. ICARA § 9003. State court custody actions may not trump clearly granted federal court jurisdiction to decide actions arising under the Hague Convention.

### IV.    COUNT I – WRONGFUL RETENTION

74.     The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

75.     The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody under the law of the child's habitual residence, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

76.     Both children are under the age of 16.

77.     The children's habitual residence is Canada and was Canada on the date the Father retained the children in the United States.

78.     From the totality of the circumstances, as of the date of retention on August 5, 2024, or in the alternative August 29, 2024, Canada was the children's home and habitual residence.

79.     Victoria, British Columbia, Canada is the children's ordinary home and holds a degree of settled purpose from the children's perspective.

80.     The children are fully involved and integrated in all aspects of daily and cultural life in Canada. The children have deep roots in the community in British Columbia, Canada.

81.     The children have friends and extended family in Canada.

82.     The children receive routine medical care, dental care and therapy in Canada.

83.     The children attend school in Canada.

84.     The children participate in extracurricular activities, playdates, and cultural activities in Canada.

85.     The children have lived continuously, without interruption in British Columbia, Canada since 2019.

86.     The Canadian Court has determined that the child's habitual residence is British Columbia, Canada and has been British Columbia, Canada since December 17, 2019.

87.     At the time the Father retained the children in the United States from Canada, the Mother had (and continues to have) rights of custody, guardianship, primary care and control of and to the children under Canadian law (the Divorce Act (Federal Statute) and the Family Law Act (Provincial Statute)).

88.     British Columbia's family law is set forth in the Family Law Act (2011) (the "Family Law Act").

89.     The Family Law Act Section 39(1) provides that both parents are guardians of their child. Section 40(1) further provides that each guardian of a child "may exercise all parental responsibilities with respect to the child in consultation with the child's other guardians."

90.    Parental responsibilities are defined in Section 41 of the Family Law Act to include, *inter alia*: (A) making day-to-day decisions affecting the child; (B) day-to-day care, custody, and supervision of the child; (C) making decisions regarding where the child will reside; (D) making decisions regarding with whom the child will reside; (E) making decisions regarding the child's education, including the nature, extent and location of education; (F) making decisions regarding the child's cultural, linguistic, religious, and spiritual upbringing; and (F) applying for passports, licenses, permits, and benefits for the child.

91.    The rights and parental responsibilities of a child's guardian under Canadian law necessarily involve the "care of the child." Guardianship and joint parental responsibilities are therefore rights of custody (British Columbia law now uses the term "guardianship" rather than "custody") under Canadian law and Article 5*a* of the Hague Convention.

92.    The Mother has guardianship of and the parental responsibilities for the children as defined by the Family Law Act. She has these rights exclusively by operation of Canadian law, and she had these rights at the time the Father retained the children in the United States from Canada.

93.    In addition to the Hague Convention article 5*a* rights of custody (known as guardianship in British Columbia) held by the Mother by operation of Canadian law, the Mother held (and continues to hold) Hague Convention article 5*a* rights of custody to the children under Canadian law in accordance with the Canadian Court's orders.

94.    On July 15, 2024, the Canadian Court entered an order that recognized, but then superseded, the Texas Court's August 2023 order. The Canadian Court held that to the extent the Texas Court's August 2023 order required relocation of the children's primary residence to Texas from Canada, the Texas Court's August 2023 order must be superseded, and the children should not be relocated to Texas from Canada.

Docusign Envelope ID: 7110387A-88E1-4573-A192-B48849E57BA9

95.     After further proceedings in Texas on July 19, 2024, the Father made an application to the Canadian Court on August 2, 2024 on an urgent basis, requesting that the Canadian Court recognize and enforce, *inter alia*, the Texas Court's July 19, 2024 order.

96.     At the August 2, 2024 hearing before the Canadian Court, the Canadian Court determined that there was a serious argument that recognition of the July 19, 2024 Texas Order would be contrary to Canadian public policy.

97.     The Canadian Court also determined that there was also a serious question as to whether the July 19, 2024 Texas Order, if recognized, should be superseded because the children are habitually resident in British Columbia, Canada and would arguably suffer serious harm if removed from British Columbia, Canada.

98.     The Canadian Court further determined that it was not possible to conduct the required evidentiary hearing before the Canadian Court on August 2, 2024 to properly address the recognition and supersession issues.

99.     The parties, through their respective Canadian counsel, therefore agreed and the Canadian Court ordered on August 2, 2024 that the Canadian Court's hearing on the recognition and supersession issues would be postponed and would recommence on August 30, 2024.

100.     The parties, through their respective Canadian counsel, further agreed and the Canadian Court further ordered on August 2, 2024 that the children would visit with the Father for parenting time in the United States until August 29, 2024, at which time the Father was ordered to return the children to the Mother in British Columbia, Canada. The Mother complied with the order; the Father did not.

101.     The operative Canadian Court orders in effect on August 5, 2024 and August 29, 2024 are therefore:

    a.   The Canadian Court's July 15, 2024 order that recognized the Texas Court's August 2023 order but superseded the provision of that order requiring relocation of the children's primary residence to Texas from Canada; and

    b.   The Canadian Court's August 2, 2024 order requiring the Father to return the children to Canada on August 29, 2024.

102.     The Mother therefore has Hague Convention article 5*a* rights of custody (known as guardianship in British Columbia, Canada) to the children under Canadian law and she had those rights at the time the Father retained the children in Texas on August 5, 2024 or in the alternative August 29, 2024.

103.     Parental responsibility for a child under Canadian law includes rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.

104.     It is a breach of the Mother's Hague Convention article 5*a* rights of custody under Canadian law for the Father to retain the children outside of Canada without the Mother's consent or order of the Canadian Court permitting him to do so.

105.     At the time the Father retained the children in the United States, the Mother had and continues to have Hague Convention article 5*a* rights of custody to the children under Canadian law.

106.     The Mother has never consented to the Father retaining the children outside Canada beyond the conclusion of the temporary court-ordered visit to Texas and return on August 29, 2024 as ordered by the Canadian Court.

107.     The Father's retention of the children in the United States is therefore in breach of the Mother's Hague Convention article 5*a* rights of custody.

108.    At the time the Father retained the children in the United States, the Mother was exercising her rights of custody within the meaning of Articles 3 and 5*a* of the Convention by living with the children, caring for the children, fully participating in the children's lives, and undertaking all parental rights and responsibilities since the children were born, or would have been so exercising her rights of custody but for the retention.

109.    The Father's retention of the children in the United States from Canada is therefore wrongful under the Hague Convention because the Father has retained the children from their habitual residence of Canada, in breach of the Mother's rights of custody to the children under Canadian law, which the Mother was exercising at the time of the retention.

110.    Notice is given in this pleading that the Mother is relying upon foreign law. FED. R. CIV. P. 44.1.

111.    The Mother has requested the return of the children to Canada by submitting her Application for Return with the Canadian Central Authority in British Columbia.

112.    The Mother has not consented or acquiesced to the retention of the children in the United States, which is further demonstrated by the August 2, 2024 order entered by the Canadian Court.

113.    The Mother has promptly and to the best of her ability taken all legal steps available to her to seek the return of the children to Canada following the wrongful retention of the children.

114.    The children are currently physically located within the Eastern District of Texas with the Father at his home, which is located at 2607 Idlewood Drive, Wylie, Texas 75098.

Docusign Envelope ID: 7110387A-68F1-4573-A192-B48849E57PA9

## V.      COUNT II – ARTICLE 18 RETURN

115.     The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 114 as if fully set forth herein.

116.     The Mother invokes Article 18 of the Convention, which grants this Court plenary power to order the children's return at any time.

## VI.     PROVISIONAL AND EMERGENCY REMEDIES[5]

117.     The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 116 as if fully set forth herein.

118.     The Mother requests that the Court issue a Show Cause Order forthwith ordering the appearance of the Father before this Court on the first available date on the Court's calendar to show cause why he has retained the children in Texas in violation of the Canadian Court orders, and directing that the Show Cause Order to be served on the Father forthwith by the United States Marshals Service.

119.     Unless this Court takes expedited action to issue the initial order requested by the Mother, irreparable harm will occur to the well-being of the children in that they will continue to be deprived of their Mother and their home, school, friends, and family in Canada.

120.     In accordance with Local Rule CV-4(d), the Mother respectfully requests that the Court order service upon the Father by the United States Marshal, rather than by private process, because: (A) the Father has told the Mother that he has a "full-time security team" surrounding his home; and (B) upon information and belief, the Father may attempt to evade service by a private process server given that his family has extraordinary wealth, which allows them access to private

---

[5]  This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition."  ICARA § 9004.

air travel, which they used on August 4, 2024 and August 5, 2024 to remove the children from Canada. The Mother will prepare all process forms and complete the required U.S. Marshal Form 285 in accordance with Local Rule CV-4(d).

121.    The Hague Convention sets forth expedited action and sets a six-week aspirational goal for final determination of this case.

122.    Pursuant to ICARA § 9004, in a proceeding for the return of a child, "[n]o court exercising jurisdiction … may … order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied."  ICARA § 9004.  In this case, the law referred to is that of the State of Texas.

123.    In the State of Texas, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as the Texas Family Code, § 152.001 *et seq*.

124.    Texas law addresses the appearance of the parties in Section 152.210 of the UCCJEA. That section authorizes this Court to order a party to the proceeding who is within the State of Texas to appear before the court in person with or without the children at issue in the case. UCCJEA § 152.210(a). The same section also authorizes the Court to "enter any orders necessary to ensure the safety of the child . . ." UCCJEA § 152.210(c).

125.    This Court therefore has the authority to issue its show cause order, ordering the appearance of the Father in that the provisions of 22 U.S.C. § 9004 have been met.

## VII.    UCCJEA DECLARATION

126.    The details regarding the children that are required to be provided under the UCCJEA are as follows:

      A.     The children are currently located with the Father within the jurisdiction of this Court at 2607 Idlewood Drive, Wylie, Texas 75098.

      B.     For almost five years immediately preceding the filing of this Petition, the children have lived at 3380 Upper Terrace Road, Victoria BC V8R 6E6 and 313-2285 Bowker Ave, Victoria BC V8R 2E2 in Canada with the Mother.

      C.     The Mother does not have information of any custody proceeding concerning the children pending in any other court of this or any other State, except as set forth in this Petition.

      D.     The Mother does not know of any person or institution not a party to the proceedings that has physical custody of the children or claims to have guardianship and parental responsibility, or legal custody or physical custody of, or visitation or parenting time with the children.

## VIII.   NOTICE OF HEARING

127.     Pursuant to 22 U.S.C. 9003(c), the parties will be given notice of any hearing in accordance with the Texas UCCJEA and all applicable Federal Rules.

## IX.   ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

128.     The Mother has incurred, and will continue to incur, reasonable and necessary attorneys' fees, expenses and costs because of the Father's wrongful retention of the children. The Mother respectfully requests that this Court award her all of her reasonable and necessary expenses and costs incurred in accordance with ICARA § 9007, upon the filing of a separate motion for reasonable and necessary expenses and costs in accordance with ICARA, the Federal Rules, and this Court's Local Rules.

      **WHEREFORE**, the Mother respectfully requests the following relief:

      A.    That this Verified Petition for Return of Children to Canada be GRANTED;

B.      That this Court issue a Show Cause Order, in the form submitted herewith, scheduling an initial show cause and scheduling hearing on the first available date on the Court's calendar;

C.      That this Court's Show Cause Order be served upon the Respondent forthwith by the United States Marshals Service;

D.      That this Court issue an Order directing the Father to pay the Mother's reasonable and necessary attorneys' fees and necessary expenses, including but not limited to suit money, expenses, and costs; and

E.      That this Court grant any such further relief as justice and the Mother's cause may require.

**VERIFICATION**

PURSUANT TO 28 U.S.C.A. §1746, I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON ____9/24/2024____.

*Sarah S.C. Moreau*

Sarah S.C. Moreau
*Petitioner*

/s/ Kelly A. Powers
Stephen J. Cullen, Lead Attorney
(D.C. State Bar No. 439872)
Kelly A. Powers
(D.C. State Bar No. 1007106)
Miles & Stockbridge P.C.
1201 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
(202) 465-8374
(410) 385-3709 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

James A. Sullivan, Jr.
(D.C. State Bar No. 475145)
Miles & Stockbridge P.C.

11 N. Washington Street
Suite 700
Rockville, Maryland 20850
(301) 517-4824
(301) 385-3700 (fax)
jsulliva@milesstockbridge.com

*Attorneys for Petitioner*