# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

SARAH S.C. MOREAU,      §
                           §
         *Petitioner,*      §
                           §
v.                                §
                           §
ANDREW CHRISTOPHER WHITE,      §
                           §
         *Respondent.*      §

Civil Action No. 4:24-cv-857
Judge Mazzant

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner's Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (Dkt. #73). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part and DENIED in part**. The Court will now issue a preliminary injunction.

## BACKGROUND

The facts of this case are more fully set out in the Court's Findings of Facts and Conclusions of Law (Dkt. #61). As such, the Court will only recount the facts that occurred after the Court entered its Final Judgment (Dkt. #62).

## I.    Emergency Relief Pending Appeal

After the Court issued its Final Judgment on January 17, 2025, Respondent Andrew Christopher White filed his Notice of Appeal on January 21, 2025 (Dkt. #62; Dkt. #63). The following day, Respondent filed his Emergency Motion for Order Staying Judgment Pending Appeal (Dkt. #64) and Petitioner filed her Response on January 23, 2025 (Dkt. #66). The Court denied Respondent's Motion on January 24, 2025 (Dkt. #67). Afterward, Respondent turned to the Fifth Circuit and requested that it grant a temporary stay of this Court's judgment requiring

that W.F.W. and C.C.W. (collectively, the "Children") be returned to Petitioner (*See* Dkt. #68). The Fifth Circuit granted a temporary stay to give it adequate time to consider Respondent's Motion seeking to stay this Court's Final Judgment pending appeal (Dkt. #68 at pp. 2–3). On January 29, 2025, the Fifth Circuit lifted its temporary stay because it did not find "the factors in *Nken v. Holder*, 566 U.S. 418, 434 (2003) to be supported" (Dkt. #69 at pp. 2–3). Further, it ordered that this Court's "judgment [should] take effect immediately" (Dkt. #69 at p. 3). As a result of the lifted stay, the Children returned to Canada with Petitioner (Dkt. #73-2 at ¶ 3). According to Petitioner, the Children "are thriving at home in Canada" (Dkt. #73-2 at ¶ 4). The Children reconnected with friends and family, reintegrated with their classmates, and are excelling academically (Dkt. #73-2 at ¶¶ 4–5).

Currently, the Court's decision is pending before the Fifth Circuit, but Respondent has not expedited the appeal (Dkt. #103 at pp. 162–64). Counterintuitively, Respondent sought an extension of the deadline by which he must file his brief, which the Fifth Circuit granted (Dkt. #103 at p. 162; Appellate Dkt. #43).

## II.    The State Court Proceedings

Though the Court determined that all matters pertaining to the Children needed to be decided by the Canadian Court (Dkt. #61 at pp. 16–21, 35; Dkt. #62), the Texas State Court ("State Court"), due to Respondent's urging, continued to proceed on matters pertaining to the child custody dispute.[1] After the Children returned to Canada, in early February, the Amicus Attorney in the State Court proceedings continued to contact Petitioner and her State Court counsel to

---

[1]  The Clerk of Court sent a copy of its Findings of Fact and Conclusions of Law as well as its Final Judgment to the State Court, which acknowledged receipt on February 10, 2025 (Dkt. #71).

request information on the Children (Dkt. #73 at p. 12; Dkt. #73-2 at ¶¶ 22–25). Understandably, Petitioner did not believe the Amicus Attorney could continue to request information from her because the Court ruled that the child custody dispute had to be decided by the Canadian Court (Dkt. #73-2 at ¶¶ 24–26). On February 17, 2025, Petitioner's State Court counsel informed the Amicus Attorney of this Court ruling that the Canadian courts must decide the child custody dispute and the matters pertaining to the Children (Dkt. #73-2 at ¶ 24). The Amicus Attorney responded that regardless of this Court's Findings of Fact and Conclusions of Law, the State Court proceedings were still ongoing (Dkt. #73-2 at ¶ 25).

Further, and in direct conflict with this Court's decision, Respondent filed numerous motions from February through April 2025 relating to substantive custody issues and to discovery in the child custody State Court dispute (Dkt. #61; Dkt. #62; Dkt. #73-2 at ¶ 29; Dkt. #91-1 at pp. 15–17). On February 18, 2025, Respondent filed his First Amended Motion for Contempt in the State Court (Dkt. #91-1 at p. 26). Through it, he argued that Petitioner violated her obligation under the State Court's July 8, 2024 order to return the Children to him (Dkt. #91-1 at p. 27). Respondent requested that Petitioner "be held in contempt, find and jailed for a period of 179 days" (Dkt. #91-1 at p. 27). On February 18, 2025, the State Court issued an Order to Appear (Dkt. #91-1 at p. 25) requiring Petitioner to appear at a hearing so it could evaluate Respondent's requested relief (Dkt. #91-1 at p. 25). Then, on March 3, 2025, Petitioner filed her Motion to Dismiss the Custody Suit in State Court (Dkt. #73-2 at ¶ 27). On March 5, 2025, Respondent filed his Motion for Further Temporary Orders for Preservation of Property & Make-Up Possession at Spring Break (Dkt. #91-1 at pp. 15–16). On March 10, 2025, Respondent filed yet another motion in the State Court for

Temporary Orders Regarding Communication and April/Birthday Possession of the Children

(Dkt. #91-1 at p. 19). In both State Court motions, Respondent represented the following:

> On January 17, 2025, the Federal Court issued a Final Judgment for the one-time return of the Children. The one-time return of the Children has been effectuated, such that the judgment for return of the Children has been fully satisfied and discharged, and the Federal Court has no further power or authority over the Children.

> Father would respectfully show this Honorable Court that the [sic] neither Mother's Petition, nor the Final Judgment rendered by the Federal Court, affect this Court's authority to exercise continuing, exclusive jurisdiction to modify possession and access.

(Dkt. #91-1 at p. 16; Dkt. #91-1 at p. 20).

As the Court will later explain in its analysis, both representations are *wrong* as a matter of fact and as a matter of law. On April 3, 2025, Judge Beauchamp held a hearing on several of Respondent's motions (Dkt. #73-2 at ¶ 30). At the hearing's conclusion, Judge Beauchamp, among other things, scheduled another hearing for April 28, 2025, to address Respondent's Motion for Temporary Possession, in anticipation of Judge Adkins's ruling on Petitioner's Motion to Dismiss the Child Custody suit (Dkt. #73-2 at ¶¶ 30–31).

On April 15, 2025, Judge Adkins heard Petitioner's Motion to Dismiss the Child Custody suit (Dkt. #73-5 at p. 2). The Amicus Attorney, counsel for Petitioner, Respondent, and the Intervenor attended the hearing (Dkt. #73-5 at p. 3). Petitioner urged the State Court to dismiss the child custody dispute, while Respondent's counsel represented that, despite this Court's order, the right of custody in the Hague Convention merely refers to conservatorship, not possession and support of the Children (Dkt. #73-5 at pp. 10–11). Respondent also represented that the State Court exercising jurisdiction over all aspects of the custody case would be consistent with the Canadian Court's prior ruling and suggested the possibility that Canada will decline jurisdiction (Dkt. #73-5

4

at pp. 14–15). Further, Respondent's counsel urged the State Court that instead of dismissal, it should consider staying the child custody portion of the suit until the Fifth Circuit rendered its decision (Dkt. #73-5 at pp. 15–16). Judge Adkins took the matter under advisement and denied the Motion to Dismiss on April 24, 2025 (*See* Dkt. #73-5 at p. 25; Dkt. #73-6 at p. 2). Further, the State Court signed temporary orders, set trial for October 20–25, 2025, and approved the Amicus Attorney's request for a retainer and trial retainer (Dkt. #73-6 at p. 2; Dkt. #73-7). Accordingly, Judge Adkins ordered Petitioner to deposit $25,000 as a retainer for the Amicus Attorney by May 5, 2025, pay additional invoices, and deposit a trial retainer of $25,000 to the Amicus Attorney thirty days before trial (Dkt. #73-6 at p. 2).

On April 28, 2025, Judge Beauchamp held a hearing on Respondent's Motion for Temporary Orders regarding summer possession of the Children (Dkt. #85-1 at pp. 2–3). The Amicus Attorney, counsel for both Petitioner and Respondent attended the proceeding (Dkt. #85-1 at p. 3). Petitioner's counsel argued—and consistent with this Court's decision—that the Canadian Court should handle all custody aspects, including possession, access, and conservatorship (Dkt. #85-1 at p. 3). Initially, Judge Beauchamp responded that Judge Adkins already determined the State Court had jurisdiction and that he would not deviate from that ruling (Dkt. #85-1 at p. 3). Later in the hearing, Judge Beauchamp asked Petitioner's counsel if he "had any authority that states that in that type of proceeding, the Hague court can make a determination about who has jurisdiction in the child custody determination, any authority?" (Dkt. #85-1 at p. 5). Petitioner's counsel (who was not her Hague counsel) stated that a sentence in the conclusion of the Court's Findings of Fact and Conclusions of Law required the proceeding to take place in Canada (Dkt. #85-1 at p. 5). While Petitioner's counsel searched for the sentence, Respondent's

counsel, Joshua H. Northam, stated that "[t]he only order of the Federal Court was to return the kids. And the federal court said—yeah, the Court said it would intervene if that wasn't accomplished, which was done pursuant to the court order" (Dkt. #85-1 at p. 5). Mr. Northam, who served as trial counsel at the Hague proceeding before this Court (Dkt. #45; Dkt. #46), knowingly misrepresented this Court's decision to the State Court. The Court's Findings of Facts and Conclusions of Law clearly state that the Court returned the Children to Canada because the Canadian Court must decide the child custody dispute (Dkt. #61 at ¶¶ 72–82; Dkt. #61 at p. 34). Later, Respondent's other counsel, Mr. John Kappel, built on this misleading argument by stating "[t]here is line [in this Court's Findings of Fact and Conclusions of Law] where the federal judge *suggests* that the Canadian court should be the one that would decide the custody dispute. I don't dispute that it says that" (Dkt. #85-1 at p. 6) (emphasis added). The referenced line in the Court's Conclusion Section stated that "[t]he Canadian court must decide the custody dispute" (Dkt. #61 at p. 34). Respondent's counsel then discussed the procedural posture of the proceedings in the Canadian court, before Judge Beauchamp returned to the sentence from the Court's conclusion in its Findings of Fact and Conclusions of Law (*See* Dkt. #85-1 at p. 6).

After apparently reviewing the sentence in the Court's conclusion, Judge Beauchamp questioned whether that sentence was "just a kind of suggestion or just kind of a [d]ictalive suggestion" (Dkt. #85-1 at p. 6). Emboldened by Judge Beauchamp's inquiry into this issue, Mr. Northam chimed in and stated "[t]hat part did not come with command language. Just the return was commanded . . . " (Dkt. #85-1 at p. 6). Again, this is a blatant misrepresentation of the Court's decision (*See generally* Dkt. #61). Understandably, Judge Beauchamp stated that there were many ways to argue this and therefore took testimony to better understand the situation (Dkt. #85-1 at p.

6). Respondent's counsel argued that while this Court's decision proceeded through the appellate process that the State Court has jurisdiction of the matter and should issue orders allowing Respondent to see the Children (*See* Dkt. #85-1 at p. 7). As the Court will explain below, that is wrong. The State Court *lacks* jurisdiction to issue orders on all aspects of the child custody dispute (including possession, access, conservatorship, and child support) unless the Fifth Circuit reverses this Court's decision. Returning to the hearing, Judge Beauchamp heard testimony from Respondent and the Amicus Attorney's argument. The Amicus Attorney also argued the Court decision's meaning and stated that the "language that says a Canadian Court must make custody provisions or orders or whatever, I believe that's just verbiage. I don't believe that that is command language, and I just think that that's thrown in there" (Dkt. #85-1 at p. 14). Yet again, that argument is incorrect. The Court did not "just throw[]" that sentence into its conclusion (Dkt. #85-1 at p. 14). Eventually, Judge Beauchamp took the matter under advisement (*See* Dkt. #85-1 at p. 14).

The following day, on April 29, 2025, Petitioner filed this Motion, requesting a Temporary Restraining Order ("TRO") and injunctive relief (Dkt. #73). The Court granted Petitioner's Motion in part by issuing a TRO on May 1, 2025 (Dkt. #78). Through it, the Court temporarily restrained Respondent and Judges Adkins and Beauchamp pursuant to the Court's authority under the All Writs Act and the Anti-Injunction Act (Dkt. #78). *See* 28 U.S.C. § 1651; 28 U.S.C. § 2283. The Court ultimately set a hearing on the Motion May 14, 2025, at 5:05 p.m. (Dkt. 84). The Court also ordered Respondent and his counsel to show cause as to why the Court should not sanction them for attempting to circumvent the Court's decision (Dkt. #78 at p. 3).

## III.    The Canadian Court Proceedings

This international judicial quagmire continued in the Great White North. From May 12–13, 2025, the Canadian Court held a hearing on Petitioner and Respondent's various submissions

7

(Dkt. #98 at pp. 2–3). Throughout the proceedings, similar to Judges Adkins and Beauchamp, the Canadian Court attempted to clarify the case's procedural posture given this Court's decision and the appeal before the Fifth Circuit (Dkt. #98-1; Dkt #98-2; Dkt. #98-3; Dkt. #110-1). Like the State Court, the Canadian Court concluded the hearing by taking many matters under advisement, but it did order that the Children not be removed from British Columbia, Canada until June 19, 2025 (Dkt. #98-3 at pp. 110–13).

## IV. The Hearing Before This Court

Returning to the Lone Star State, on May 14, 2025, and after a full day of trial, the Court held a hearing on Petitioner's Motion from 5:13 p.m. until 8:15 p.m. (Dkt. #73; Dkt. #90).[2] Petitioner, Respondent, and their respective counsel appeared before the Court (Dkt. #90).[3] The Court began the hearing by stating it was "mystified by the actions of the Respondent and what's happening in the State Court. [The Court thought its] Order was clear in terms of the decision on returning the [C]hildren to Canada, that Canada was the habitual residence of the [C]hildren and Canada has to decide all custody issues" (Dkt. #103 at pp.4–5). Respondent's counsel argued that this Court's decision did not require the State Court to vacate its prior orders and that confusion

---

[2]  Petitioner filed this Motion on April 29, 2025 (Dkt. #73). Then, she filed an additional attachment on May 11, 2025 (Dkt. #85). Respondent filed his Response to the Motion (Dkt. #73) on May 13, 2025 (Dkt. #88). Then, he filed a Response to Petitioner's Additional Attachment on May 19, 2025 (*See* Dkt. #99). The Court considered these filings in ruling on this Motion (Dkt. #73).

[3]  The Court ordered the Amicus Attorney to appear at the hearing on Petitioner's Motion (Dkt. #78 at p. 3). It is unclear whether the Amicus Attorney attended the proceeding. The Amicus Attorney did not make an appearance on the record at the beginning of the proceeding nor inform the Court of her attendance or absence (*See* Dkt. #90 at pp. 1–2; Dkt. #103 at p. 4). In the future, the Amicus Attorney should communicate with the Court's Courtroom Deputy regarding attendance; otherwise, the Court may sanction her for failure to adhere to the Court's orders. *See* Local Rule AT-3(i) ("Lawyers will be punctual in communications with others and in honoring scheduled appearances and will recognize that neglect and tardiness are demeaning to the lawyer and to the judicial system."); *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) ("A district court has the inherent authority to impose sanctions in order to control the litigation before it. The court may also use that power to sanction conduct if it is in direct defiance of the sanctioning court or constitutes disobedience to the orders of the Judiciary.") (citations omitted) (cleaned up).

existed in the State Court because "there [was] a prior order from the Canadian Court declining jurisdiction in Texas" (Dkt. #103 at p. 8). The Court noted that its decision did not require the State Court to dismiss the action or vacate the State Court's prior orders (Dkt. #103 at pp. 7–8). However, the Court did note that "[u]ntil the Fifth Circuit decides the appeal . . . we're left with a situation of the State Court, in my view, can't take any action on the child custody issues" (Dkt. #103 at p. 7). The Court also noted that the Canadian Court would have to decide issues relating to temporary orders or for Respondent to visit the Children (Dkt. #103 at p. 8). Respondent's counsel also represented that the Hague Convention defines "custody" and "access" differently and that this Court's order only used the term custody (Dkt. #103 at p. 12).

Once the argument turned to Petitioner, unsurprisingly, her counsel agreed with the Court's inclination that Canada must decide these custody matters (Dkt. #103 at p. 13). Further, Petitioner's counsel argued that it would be incorrect to recognize a distinction among orders regarding custody, visitation, and possession (Dkt. #103 at p. 14). And once the Court turned to the issue of the preliminary injunction, Petitioner represented that there were no factual disputes and the taking of evidence at the hearing was unnecessary (*See* Dkt. #103 at p. 26). Respondent's counsel disagreed and the Court permitted Respondent to take the stand (*See* Dkt. #103 at pp. 26–27).

Respondent remained on the stand from 5:40 p.m. until 8:02 p.m. and was briefly recalled for less than 10 minutes at 8:05 p.m. (Dkt. #90). During Respondent's testimony, he disputed Petitioner's representation of his actions, explained his reason for canceling the Fifth Circuit mediation and for what transpired in the State Court and Canadian Court proceedings, and alleged that Petitioner is preventing him from speaking with the Children (*See* Dkt. #103 at pp. 27–153,

9

156–59). The Court assessed Respondent's credibility throughout his testimony on direct and cross-examination.

The Court finds Respondent uncredible given his demeanor throughout the proceeding as well as his testimony. Beginning with his demeanor, Respondent constantly fidgeted throughout his testimony and could not remain still on the stand. Further, at times, Respondent offered answers that seemed to visibly confuse his own counsel. Then, on cross-examination, Respondent appeared not to be able to focus when asked about a filing he made in the State Court. Respondent's apparent inability to focus was so severe as to prompt the Court to inquire "[Petitioner's counsel] just went through all of those [provisions of Exhibit 2]. Were you not paying attention? She went through all of that" (Dkt. #103 at p. 131; *see also* Dkt. #103 at pp. 127–33 (cross-examination of Respondent regarding Exhibit 2)).

After cross-examination, Petitioner took the stand, testified, and was cross examined (Dkt. #90). Further, Petitioner's counsel offered exhibits during her testimony (Dkt. #90). Respondent took the stand again and completed his testimony (Dkt. #90). The Court advised the parties that it would consider everything that had been filed, but requested that the parties submit a transcript, once it became available, of the proceedings of May 12–13, 2025 in the Canadian Court (Dkt. #103 at p. 160). Further, the Court permitted the parties to submit their closing arguments by brief due on Friday May 16, 2025, at 5:00 p.m. (*See* Dkt. #103 at pp. 160–64; Dkt. #90 at p. 2). The Court also informed the parties that it would extend the TRO for good cause, which the Court did the following day by written Order (Dkt. #92).

## V.    The Parties' Submissions

Following the hearing, on May 16, 2025, Respondent filed his Verified Motion to Extend Deadline to File Closing Brief, which Petitioner opposed (Dkt. #94). The Court, however, granted

Respondent's Motion and extended the deadline to May 19, 2024, at 5:00 p.m. (Dkt. #95). On May 19, 2025, Petitioner filed her closing brief with a transcript of the Canadian Court proceedings available at the time and indicated she would supplement her submission once a full transcript became available (Dkt. #98 at pp. 1–2). Respondent filed his closing brief, which included excerpts of the Canadian Court proceedings and the exhibits admitted during the hearing before this Court on May 14, 2025 (Dkt. #100; Dkt. #101; Dkt. #102; Dkt. #104; Dkt. #105; Dkt. #106; Dkt. #107; Dkt. #108; Dkt. #109). Respondent also filed a Response to Petitioner's Additional Attachment (*See* Dkt. #99; Dkt. #85). On May 21, 2025, Petitioner filed an Additional Attachment that included the transcript of the second afternoon session of May 12, 2025, in the Canadian Court (Dkt. #110). The Court carefully considered the voluminous submissions before it.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that they will suffer irreparable harm absent injunctive relief; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not harm the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction . . .should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove his case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision of whether to

grant a preliminary injunction lies within the sound discretion of the district court. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

**ANALYSIS**

## I.    The Court's Authority to Issue Injunctive Relief

The Court has authority to issue injunctive relief pursuant to the All Writs Act and the Anti-Injunction Act. *See* 28 U.S.C. § 1651; 28 U.S.C. § 2283. The All Writs Act provides in pertinent part that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see Sampson v. Murray*, 415 U.S. 61, 73 (1974) (noting that the All Writs Act was first enacted as part of the Judiciary Act of 1789). At first glance, this authority seems expansive and unbridled. Not so. The Anti-Injunction Act, "which has existed in some form since 1793," *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988), serves as a check by providing that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. These statutes co-exist to effectuate the "Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." *Chick Kam Choo*, 486 U.S. at 146. As an initial matter, the Court retained jurisdiction to effectuate its judgment (*See* Dkt. #61 at p. 35). And, Respondent does not dispute that the Court has authority to issue injunctive relief in this matter (*See* Dkt. #88; Dkt. #99; Dkt. #100). Out of an abundance of caution, the Court will fully address this issue. As explained below, the "Protect or Effectuate Judgments" Exception to the Anti-Injunction Act applies to this case and grants the Court authority to enjoin the State Court proceedings.

12

The "Protect or Effectuate Judgments" Exception "authorizes the issuance of an injunction to prevent relitigation of matters that have been finally decided by a federal court." *See Carey v. Sub Sea Int'l, Inc.*, 121 F. Supp. 2d 1071, 1073 (E.D. Tex. 2000). "The Fifth Circuit uses a four-part test to determine whether the relitigation exception to the Anti–Injunction Act applies to preclude litigation of a claim in state court: (1) 'the parties in a later action must be identical to (or at least in privity with) the parties in a prior action;' (2) 'the judgment in the prior action must have been rendered by a court of competent jurisdiction;' (3) 'the prior action must have concluded with a final judgment on the merits;' and (4) 'the same claim or cause of action must be involved in both suits.'" *Id.* (quoting *Regions Bank of La. v. Rivet*, 224 F.3d 483, 488 (5th Cir. 2000)). This case satisfies each element.

First, the parties in the State Court and this Court are identical because Petitioner and Respondent are the litigants in both courts (*See* Dkt. #78; Dkt. #92). Second, the Court was and is a court of competent jurisdiction that rendered a judgment in the matter (*See* Dkt. #62). *See* 22 U.S.C. § 9003(a) ("The courts of the States and the United States district court shall have concurrent original jurisdiction of acts arising under the Convention."). Third, the action before the Court concluded with a final judgment on the merits (*See* Dkt. #61; Dkt. #62). Fourth, the same claim—the child custody dispute—was involved in both suits (*See generally* Dkt. #61). Accordingly, each element of the "Protect or Effectuate Judgements" Exception is met here. *Regions Bank of La.*, 224 F.3d at 488. Thus, the Court has authority to issue injunctive relief if Petitioner can satisfy the preliminary injunction elements, which the Court analyzes below.

## II.    Preliminary Injunction

A party seeking a preliminary injunction must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that they will suffer irreparable harm

absent injunctive relief; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not harm the public interest. *Nichols*, 532 F.3d at 372. Here, Petitioner carries her burden. Thus, the Court finds that a preliminary injunction is proper.

### A.    Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of this case. *See Nichols*, 532 F.3d at 372. First, the Court concluded that Petitioner established her *prima facie* case at trial. Petitioner proved that Canada is the Children's habitual residence and should therefore determine the entire child custody dispute (*See* Dkt. #61 at ¶¶ 72–94). Second, once the Court entered its Final Judgment, Respondent urged the Court to stay its judgment pending his appeal (*See* Dkt. #64). The Court carefully considered his Motion, determined he did not satisfy the *Nken* factors, and denied the Motion (Dkt. #67 at p. 8). Undeterred, Respondent then sought to stay this Court's judgment before the Fifth Circuit (*See* Dkt. #68). For a third time, Respondent failed. The Fifth Circuit also concluded that Respondent could not satisfy the *Nken* factors (*See* Dkt. #69 at pp. 2–3). These previous rulings lead the Court to conclude that Petitioner is likely to succeed on the merits of this case. Petitioner is also likely to succeed on the merits because Respondent's argument that rights of custody are distinct from rights of access is wrong. Respondent's main argument is the following:

> [T]he effect of Article 16 and this Court's Final Judgment, which also only mentions the Canadian Court adjudicating "custody" do not automatically foreclose the ability of the Texas State Court to address "access" issues otherwise within the Texas State Court's jurisdiction in at least some capacity.

(Dkt. #88 at ¶ 27).

Respondent bolsters this argument by relying on the Pérez–Vera Explanatory Report (the "Report") to assert that rights of "custody" and rights of "access" are distinct (*See* Dkt. #88 at

14

¶ 26). He also correctly notes the Report's persuasive value in the Fifth Circuit. *See Madrigal v. Tellez*, 848 F.3d 669, 673 n.1 (5th Cir. 2017) ("The Pérez–Vera Explanatory Report is recognized as the official history, commentary, and source of background on the meaning of the provisions of the Convention.") (internal quotation marks and citation omitted). Respondent's argument, however, is foreclosed by a recent Supreme Court decision. In *Golan v. Saada*, a unanimous Supreme Court noted that the Hague Convention's "core premise is that the interest of children in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." 142 S. Ct. 1880, 1888 (2022) (cleaned up and citations omitted). This is why the Hague Convention generally requires courts to promptly return children to their country of habitual residence. *See id.* The return requirement "ensures that rights of custody and *of access* under the law of one Contracting State are effectively respected in the other Contracting States." *Id.* (cleaned up and citations omitted) (emphasis added). As such, Respondent's argument—that rights of custody are separate and distinct from rights of access—rings hollow.

Respondent also argues that the State Court should decide issues of *child support*, while the Canadian Court should decide issues of *custody* (*See* Dkt. #88 at ¶ 18–19). Respondent's proposed piecemeal litigation would run afoul of a fundamental interpretive principle applicable to all legal texts—the presumption against ineffectiveness. *See* Bryan A. Garner & Antonin Scalia, Reading Law: The Interpretation of Legal Texts 63 (2012) ("The presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered."). If Respondent's argument carried the day, the Hague Convention would be turned on its head because its "core premise is that the interest of children *in matters relating to their custody* are best served when custody decisions are made in the child's country of habitual residence." *Golan*, 142

S. Ct. at 1888 (cleaned up and citations omitted) (emphasis added). It would undercut the Hague Convention's purpose if certain matters were heard in the Canadian Court while child support was heard before the Texas court. If that were the case, the Texas Court, Canadian Court, and possibly this Court would continually be dragged into the fray to resolve intricate conflict of laws problems. This result would merely frustrate the Hague Convention's purpose and hinder judicial economy by causing courts worldwide to question what authority they have to decide the issues properly before them. Because Respondent's best arguments are likely to fail, then, the Court finds that Petitioner is likely to succeed on the merits. *See Nichols*, 532 F.3d at 372.

### B.    Substantial Threat of Irreparable Harm

Petitioner faces a substantial threat of irreparable harm if she is forced to litigate the child custody dispute in the State Court. Petitioner won at trial and the Court determined that Canada must decide the child custody dispute and all matters pertaining to the Children. Forcing her to litigate any child custody matters in Texas deprives her of that victory and is irreparable harm. *See Dow Agrosciences, LLC. v. Bates*, No. 5:01-CV-331-C, 2003 WL 22660741, at *30 n.2 ("There is broad agreement that a party suffers irreparable harm when it is required to relitigate in state court issues previously decided in federal court."). Accordingly, this element is also satisfied.

### C.    The Threatened Injury to Petitioner as Opposed to Respondent

Petitioner's threatened injury outweighs any damage that the injunction might cause Respondent. Here, Petitioner prevailed at trial, and unless the Fifth Circuit reverses this Court, she has a valid judgment that precludes Respondent from litigating the child custody dispute and all matters pertaining to it in the State Court (*See* Dkt. #61 at pp. 34–35; Dkt. #62). The burden on Petitioner is far greater than it is on Respondent. First, Respondent is able to litigate the child custody dispute in the Canadian Court. In fact, he can continue litigating this case in Canada and

potentially obtain the relief he seeks, such as access to the Children, by participating in the Canadian Court proceedings (*See* Dkt. #88 at ¶ 38). Forcing Petitioner to litigate the child custody dispute in State Court—a forum this Court determined is inappropriate—weighs more heavily on Petitioner. Second, Respondent is concerned about the time he can spend with the Children (*See, e.g.*, Dkt. #91-1 at pp. 15–17). But he is likely able to spend time with the Children in Canada. Respondent argued at trial that Canadian immigration officials would probably not permit him to enter the country again, though he was let into the country in the past (*See* Dkt. #57 at pp. 293–94). The Canadian Court severely undercut this argument, however, when it stated it "would encourage Mr. White to seek approval from the immigration authorities in [] Canada so that he can come here, and [the Court] would encourage him to do that as soon as he can" so he can visit the Children (Dkt. #98-3 at p. 117). The relative burden imposed on Petitioner to travel back and forth to Texas is far heavier, particularly when this Court has already determined the Canadian Court should decide the child custody issue. As such, the threatened injury to Petitioner is far greater than the injunction might cause Respondent (*Cf.* Dkt. #67 at pp. 6–7). As such, this element also favors Petitioner.

### D.    Public Interest

This element cuts in Petitioner's favor because the injunction will not harm the public interest. On the contrary, the injunction serves the public interest by supporting the supremacy of federal law and by preserving the Fifth Circuit's jurisdiction to decide this appeal. *See Named Individual Members of San Antonio Conservation Soc. v. Texas Highway Dept.*, 446 F.2d 1013, 1027 (5th Cir. 1971) ("The supremacy of federal law has been recognized as a fundamental principle of our Government since the birth of the Republic."); *see also Chick Kam Choo*, 486 U.S. at 146 (noting that the exceptions to the Anti-Injunction Act "are designed to ensure the effectiveness and

supremacy of federal law"). This case, and all Hague Convention cases like it, involves an intricate relationship between two nations' courts, and here, three court systems. The Court is wary of enjoining state court proceedings due to the "fundamental constitutional independence of the States," and the fact that "Congress adopted a general policy under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts. . . .'" *Id.* (quoting *Atlantic Coast Line R.R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)). And the Court is especially cognizant of the federalism concerns raised by a federal court enjoining a state court because of my years of service as a Justice on the Fifth District Court of Appeals at Dallas. The Court also recognizes that Judges Adkins and Beauchamp are diligently working to ensure equal and fair justice for the parties before them in this case. The Court appreciates that the State Court judges are tirelessly working to ensure the efficient administration of justice so Petitioner, Respondent, and the Children can move forward from this chapter of their lives into the next, hopefully brighter, one. As the Court noted in its Findings of Fact and Conclusions of Law as well as at the hearing on this Motion, it is abundantly clear that Petitioner and Respondent love, and are loved, by the Children (*See* Dkt. #61 at ¶ 128; Dkt. #103 at pp. 161–62). Be that as it may, Respondent's continued litigation in the State Court on the child custody dispute is inexcusable. His proper remedy is to litigate his appeal before the Fifth Circuit, which he did not expedite (*See* Dkt. #103 at pp. 162–64). As the Court noted above, Respondent sought, and the Fifth Circuit granted, an extension of time by which Respondent must submit his brief (Dkt. #103 at p. 162; Appellate Dkt. #43). Considering the circumstances, the public interest is served by ensuring that the Fifth Circuit—not the State Court—decides issues on appeal that balance federalism,

international law, and conflicts of laws with each other. Accordingly, this element also favors Petitioner.

In conclusion, the Petitioner carries her burden of proving that each of the preliminary injunction elements cuts in her favor. *Nichols*, 532 F.3d at 372.

*        *        *

The Court is reluctant to admonish the parties and counsel, but their conduct in this case leaves it with no choice. The Court has been exceedingly patient with the parties and counsel in this case. The Court cautioned the parties and counsel in its Findings of Fact and Conclusions of Law that "if needed, the Court will order further relief to effectuate compliance with this Order." (Dkt. #61 at p. 35). The Court then ordered Respondent and his attorneys to "show cause as to why the Court should not sanction them for attempting to circumvent compliance with the Court's Order" (Dkt. #78 at p. 3). On May 14, 2025, the Court held a hearing on Petitioner's Motion (Dkt. #73) and determined that "sanctions [were] not warranted" against Respondent and his attorneys "because their arguments were superficially plausible" (Dkt. #92 at p. 2).

For the last time, the Court ***warns*** Petitioner, Respondent, and counsel for the parties that, if needed, the Court will order further relief to effectuate compliance with this injunction. If needed, the Court will impose appropriate sanctions against the parties and counsel as well as refer attorneys who attempt to circumvent this injunction to the Texas State Bar Association's Office of Chief Disciplinary Counsel. *See Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1191 (E.D. Tex. 1996) (Brown, J.); *Shillitani v. United States*, 384 U.S. 364, 369 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) ("A district court has the inherent

authority to impose sanctions in order to control the litigation before it. The court may also use that power to sanction conduct if it is in direct defiance of the sanctioning court or constitutes disobedience to the orders of the Judiciary.") (citations omitted) (cleaned up).

## CONCLUSION

It is therefore **ORDERED** that Petitioner's Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (Dkt. #73) is hereby **GRANTED in part** and **DENIED in part** in that the Court issues a preliminary injunction. It is further **ORDERED** that everything in this conclusion is **COMMAND** language.

Respondent Andrew Christopher White and others are **ENJOINED** as follows:

1. Respondent Andrew Christopher White shall immediately cease and desist litigating the child custody dispute in the Texas State Court and shall cease and desist seeking affirmative relief relating to the child custody dispute in the Texas State Court.

2. Respondent Andrew Christopher White shall immediately cease and desist attempting to have recognized and/or enforced in Canada any and all orders entered by the Texas State Court after this Court's federal Return Order (Dkt. #61) had been entered.

3. Hon. LaDeitra Adkins, Judge of the State of Texas and the Hon. Scott Beauchamp, Associate Judge of the State of Texas shall immediately cease and desist proceeding with the child custody dispute, and from entering any temporary or final orders in the child custody dispute.

4. For purposes of this Order, the following definition applies: "Child Custody Dispute" shall mean the Suit Affecting the Parent-Child Relationship case pending between the parties in the 303rd Judicial District Court, and includes but is not limited to all conservatorship, possession, access, custody, parenting time, child support, and visitation matters pending between the parties in the Texas State Court. The Texas State Court, of course, possesses jurisdiction to decide the divorce between Petitioner and Respondent, as well as the division of property between them.

5. The Memorandum Ruling by the Texas State Court rendered on April 24, 2025, requiring Petitioner "to deposit $25,000 as a

retainer for the Amicus by May 5, 2025, and [] pay any additional invoices within 7 days of receipt" is hereby **STAYED** for the duration of this preliminary injunction (Dkt. #73-6 at p. 2). *See* 28 U.S.C. § 1651; 28 U.S.C. § 2283.

It is further **ORDERED** that the Canadian Court shall decided the child custody dispute because the Texas State Court currently lacks jurisdiction to decide anything regarding the child custody dispute, except recognize orders the Canadian Court issues regarding the child custody dispute. If the Fifth Circuit reverses the Court, *then and only then* will the child custody dispute return to the Texas State Court.

It is further **ORDERED** that Petitioner be awarded attorneys' fees and other costs associated with this action. *See* 22 U.S.C. § 9007(b)(3).

It is further **ORDERED** that Petitioner is not required to post bond in connection with this injunction.

It is further **ORDERED** that the lead attorneys **MUST** provide the Amicus Attorney, Leora Olorunnisomo (Texas State Bar No. 00786147) with a copy of this Order to inform her that the child custody dispute is no longer proceeding in the Texas State Court.

The Court **RETAINS** jurisdiction to enforce this injunction.

The Clerk is **DIRECTED** to send a copy of this preliminary injunction to the following:

1. HONORABLE LaDeitra Adkins, Presiding Judge, State of Texas, via USPS Certified Mail to: 303rd Judicial District Court, George L. Allen, Sr. Courts Building, 600 Commerce Street, Dallas, Texas 75202

2. HONORABLE Scott Beauchamp, Associate Judge, State of Texas, via USPS Certified Mail to: 303rd Judicial District Court, George L. Allen, Sr. Courts Building, 600 Commerce Street, Dallas, Texas 75202

3. HONORABLE Ken Paxton, Attorney General of Texas, via USPS Certified Mail to: Office of the Attorney General, 300 W. 15th Street, Austin, Texas 78701

**IT IS SO ORDERED.**

**SIGNED this 28th day of May, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE